SEYFARTH SHAW LLP
Camille A. Olson (SBN 111919)
colson@seyfarth.com
Richard B. Lapp (SBN 271052)
rlapp@seyfarth.com
Robin E. Devaux (SBN 233444)
rdevaux@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
DHL EXPRESS (USA), INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JORGE A. MEJIA, an individual, appearing on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>DHL EXPRESS (USA), INC., an Ohio corporation; and DOES 1-25,<br><br>    Defendants. | Case No.<br><br>**DEFENDANT DHL EXPRESS (USA), INC.'S NOTICE OF REMOVAL**<br><br>[Los Angeles County Superior Court Case No. BC565422]<br><br>Date Action Filed:   December 2, 2014 |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that Defendant DHL Express (USA), Inc. ("Defendant" or "DHL") files this Notice of Removal pursuant to 28 U.S.C. sections 1441 and 1446, asserting original federal jurisdiction under 28 U.S.C. sections 1332(d)(2) and 1453, to effect the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California in and for the County of Los Angeles, to the United States District Court for the Central District of California. This Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005 ("CAFA") for the following reasons:

## BACKGROUND

1. On December 2, 2014, an action was commenced in the Superior Court of the State of California in and for the County of Los Angeles, entitled "Jorge A. Mejia, an individual, appearing on behalf of himself and all others similarly situated, Plaintiff, vs. DHL Express (USA), Inc., an Ohio corporation; and Does 1-25, Defendants," as Case Number BC565422. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2. On January 7, 2015, plaintiff filed a First Amended Complaint. A true and correct copy of the First Amended Complaint (hereinafter, "FAC") is attached hereto as **Exhibit B**.

3. The FAC asserts causes of action for: (1) "Violation of Labor Code §§ 226.7(a) and 512(a) (Denial of Meal Breaks)"; (2) "Violation of Labor Code § 226.7(a) (Denial of Rest Breaks)"; (3) "Violation of Labor Code § 204 (Failure to Pay Wages for Hours Worked)"; (4) "Violation of Labor Code §§ 1194, 1194.2, 1197, 1197.1 (Failure to Pay Minimum Wage)"; (5) "Violation of Labor Code § 226(a) (Inaccurate Wage Statements)"; (6) "Violation of Labor Code §§ 201-203 (Unpaid Wages at Discharge)"; (7) "Violation of Labor Code § 227.3"; (8) "Violation of Business &

Professions Code §§17200 *et seq.*"; (9) "Non-Class Representative Action under PAGA, Labor Code §§ 2698 *et seq.*"

4. The FAC seeks to certify a class of "All current and former employees of Defendant DHL who were employed as non-exempt employees at any of Defendant DHL's locations anywhere in California, at any time from four years prior to the initiation of this action until the date of certification." (FAC ¶ 7.)

5. Defendant was served with the Summons, Complaint, FAC, and supporting documents on January 8, 2015. True and correct copies of the (1) Summons, (2) Notice of Case Assignment, (3) Voluntary Efficient Litigation Stipulations, (4) Civil Case Cover Sheet, (5) Civil Case Cover Sheet Addendum and Statement of Location, and (6) Service of Process Transmittal are attached hereto as **Exhibit C**.

6. On February 5, 2015, Defendant filed and served its Answer to Plaintiff's FAC. A true and correct copy of the Answer is attached hereto as **Exhibit D**. Defendant has not filed any other pleadings or papers in this action prior to this Notice of Removal.

7. In order to be timely, a Notice of Removal must be filed within thirty days of service. *See* 28 U.S.C. § 1446(b). Defendant was served with the Complaint and FAC on January 8, 2015. Accordingly, this Notice of Removal is timely.

## PROCEEDINGS IN STATE COURT

8. There are currently no hearings scheduled in the above-referenced matter in the Los Angeles County Superior Court. (Declaration of Robin E. Devaux ("Devaux Decl."), ¶ 3.)

9. Attached Exhibits A-D constitute all of the pleadings in the Superior Court's record that have been served on or filed by Defendant prior to the filing of this Notice of Removal. (Devaux Decl., ¶ 4.)

## CLASS ACTION FAIRNESS ACT ("CAFA")

10. This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. section 1332(d)(2). As set forth below, this action is

removable under 28 U.S.C. sections 1453, 1441 and 1446 as the action (1) involves 100 or more putative class members; (2) at least one class member is a citizen of a state different from that of at least one defendant; and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) & (d)(6).

## I.  THE CLASS SIZE

11.  The number of putative class members exceeds 100, as required by 28 U.S.C. section 1332(d)(5)(B). (*See* FAC ¶ 8(a) ("Plaintiff alleges on information and belief and, based thereon, allege [*sic*] that the members of the Class exceed one hundred (100) persons").)

## II.  DIVERSE CITIZENSHIP OF THE PARTIES

12.  CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2)(A). In the instant case, such minimal diversity exists among the parties. Plaintiff is a citizen of a state that is different from the state of citizenship of the Defendant.

### A.  Plaintiff Is a Citizen of California

13.  Plaintiff is and, at all times since the commencement of this action has been, a resident and citizen of the State of California. For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must . . . be domiciled in the state."). A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is *prima facie* the domicile"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*,

243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). In addition, various other types of objective facts can establish Plaintiff's state of domicile, including place of employment. *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

14. Plaintiff alleges in his FAC that he "worked as a cargo handler for Defendant until approximately December 13, 2013, at Defendant's facility in Los Angeles, California." (FAC ¶ 1.) Defendant's personnel records indicate that Plaintiff was employed by Defendant in California from October 7, 1999 until his termination on December 16, 2013. (Declaration of Joshua Barcon ("Barcon Decl."), ¶ 3.) As part of his Application for Employment, Plaintiff indicated that he had been employed by other employers in California since at least January 1, 1998 and also provided Defendant with a copy of his California driver's license. (Barcon Decl., ¶ 3.)

15. Thus, plaintiff is a citizen of the State of California.

**B.   Defendant Is Not a Citizen of California**

16. Pursuant to 28 U.S.C. section 1332(c)(1), "for purposes of this subsection and section 1453 [28 U.S.C. § 1453], [a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." To determine a corporation's principal place of business for diversity purposes the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.* Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based. *See Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

17.     Defendant is, and has been at all times since this action commenced, a corporation organized under the laws of the State of Ohio. (Declaration of Carol Marcus-Stanley ("Marcus-Stanley Decl."), ¶ 3; *see also* FAC ¶ 2 ("Defendant…is an Ohio corporation…").)

18.     Further, Defendant's principal place of business is, and has been at all times since this action commenced, located in the State of Florida. (Marcus-Stanley Decl., ¶ 3.) Defendant's corporate headquarters are located in Plantation, Florida, where Defendant's high level officers direct, control, and coordinate Defendant's activities. (*Id.* at ¶ 4; *see also* FAC ¶ 2 ("Defendant['s]… principal place of business [is] located in Plantation, Florida.").) Additionally, many of Defendant's administrative functions, including corporate finance, payroll, and accounting, are directed from the Plantation, Florida office. (Marcus-Stanley Decl. at ¶ 4.) Accordingly, Defendant's principal place of business is Plantation, Florida under the "nerve center" test. *See Hertz Corp.*, 130 S. Ct. at 1192.

19.     Therefore, for diversity of citizenship purposes, Defendant is, and has been at all times since this action commenced, a citizen of the States of Ohio and Florida. 28 U.S.C. § 1332(c)(1).

### C.     Doe Defendants May Be Disregarded

20.     The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002). Thus, the existence of Doe Defendants one through 25 does not deprive this Court of jurisdiction. *Albrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

21.     Accordingly, the minimal diversity requirement under CAFA exists as Plaintiff and Defendant are citizens of different states.

### III. AMOUNT IN CONTROVERSY

22.  CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case. . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

23.  The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000. The Complaint seeks relief on behalf of: (1) "All current and former employees of Defendant DHL who were employed as non-exempt employees at any of Defendant DHL's locations anywhere in California, at any time from four years prior to the initiation of this action until the date of certification."  (FAC ¶ 7.)

24.  Among other things, Plaintiff alleges that Defendant "failed to provide full, legally-compliant rest periods to Plaintiff and the rest of the Class on a timely basis." (FAC ¶ 12(b).) Plaintiff additionally alleges that Defendant "failed to provide accurate and complete wage statements to Plaintiff and the rest of the Class." (FAC ¶ 12(e).) Plaintiff

further alleges that Defendant "failed to pay final wages due Plaintiff and other former employees in the Class on a timely basis immediately upon the employee being discharged or within seventy-two (72) hours of the member quitting." (FAC ¶ 12(f).)

25. Plaintiff seeks to recover on behalf of the alleged class statutory penalties for Defendant's alleged failure to provide legally-compliant rest periods. (FAC ¶ 22; Prayer.) Plaintiff further seeks to recover statutory penalties for Defendant's alleged failure to provide legally-compliant wage statements. (FAC ¶ 35; Prayer.) Plaintiff also seeks to recover statutory penalties for Defendant's alleged failure to timely pay Plaintiff and other putative class members who have separated from employment all wages allegedly owed to them upon separation. (FAC ¶ 40; Prayer.) Plaintiff seeks attorneys' fees on all causes of action. (FAC Prayer.)

### A.  Plaintiff Seeks Rest Period Penalties Exceeding $6,719,878

26. Labor Code section 226.7(b) provides that "An employer shall not require an employee to work during a meal or rest or recovery period." Section 12(A) of the IWC Wage Orders requires employers to allow employees a paid-ten-minute rest period for every four hours worked, or major portion thereof. Labor Code section 226.7(c) provides that "If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law…the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

27. Plaintiff contends that Defendant "adopted and maintained uniform policies, practices and procedures governing the working conditions of, and payment of wages to, to [*sic*] Plaintiff and the rest of the Class." (FAC ¶ 11.) Plaintiff further contends that these "uniform policies, practices and procedures" include an alleged failure "to provide full, legally-compliant rest periods to Plaintiff and the rest of the Class on a timely basis. Specifically and without limitation, during the Class period, Defendants failed to provide first, second and third rest periods to Plaintiff and the rest of the Class and failed to adopt policies and practices authorizing such rest periods." (FAC ¶¶ 12(b); *see also id.* at 21.)

28. The alleged limitations period for potential claims under Labor Code section 226.7 would be from December 2, 2011 (three years before the Complaint was filed) to the present. From December 2, 2011 to January 15, 2015 (the last date for which data are presently available), there were 722 non-exempt employees in California. (Declaration of Kathy Lloyd ("Lloyd Decl."), ¶ 3; Devaux Decl., ¶ 6.) The lowest average hourly rate of pay for these employees during the same period was $21.40. (*Id.*) During that period, these employees worked a total of 314,013 workdays. (Declaration of David Nugen ("Nugen Decl."), ¶ 4; Devaux Decl., ¶ 6.)

29. Because Plaintiff alleges that Defendant had "uniform policies, practices and procedures" of failing to provide rest breaks, a penalty of $21.40 (one additional hour of pay) could be assessed for each workday during the time period. The alleged amount in controversy for this claim would therefore be **$6,719,878.20** [(314,013 workdays) x (average hourly rate of $21.40)].[1]

**B.  Plaintiff Seeks Wage Statement Penalties of $1,707,150**

30. Labor Code section 226(a) provides that employers shall, "semimonthly or at the time of each payment of wages," furnish each employee with "an accurate itemized statement in writing showing" all of the items of information required by Labor Code section 226(a)(1)-(9).

31. Plaintiff alleges that "during the Class period Defendant[] knowingly and intentionally failed to provide…accurate and complete itemized wage statements to

---

[1] Notwithstanding the reasonableness of the foregoing estimate in light of Plaintiff's allegations, the Court may prefer to apply a more conservative estimate of only one alleged violation per week. *See Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, *5 (N.D. Cal. Mar. 1, 2012) (finding an estimate of one alleged rest break violation per week to be reasonable for purposes of determining the amount in controversy). From December 2, 2011 to January 15, 2015, there were 162 weeks. (Devaux Decl., ¶ 5.) Assuming only one violation per week, the alleged amount in controversy for missed rest breaks applying that more conservative estimate would be **$2,503,029.60** [(162 weeks) x (722 employees) x (average hourly rate of $21.40)]. Even applying this lower amount, the total amount in controversy is over $5,000,000 once the amount in controversy in penalties is summed, as detailed below.

Plaintiff and the rest of the Class members, in that such statements failed to show accurately all hours worked, the gross and net wages earned and all applicable hourly rates…" (FAC ¶ 33.) Plaintiff further alleges that Defendant "failed to keep on file for at least three years…payroll records showing the hours worked daily by employees employed at the respective plants or establishments." (FAC ¶ 34.)

32. Labor Code section 226(e) permits an employee to recover the greater of actual damages or $50 for the initial pay period in which a wage statement violation occurs, and $100 for each subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee. The alleged limitations period for potential claims under Labor Code section 226 would be from December 2, 2013 (one year before the Complaint was filed) to the present. From December 2, 2013 to January 15, 2015 (the last date for which data are presently available), there were 599 non-exempt employees in California who received wage statements. (Lloyd Decl., ¶ 3; Devaux Decl., ¶ 8.)

33. From December 2, 2013 to January 15, 2015, there were 29 biweekly pay periods. (Nugen Decl., ¶ 3.) Accordingly, 28 of those pay periods would be subject to a penalty of $100 per employee, with an additional pay period subject to $50 per employee. Thus, the alleged amount in controversy for the claim for wage statement penalties would be **$1,707,150** [(((28 pay periods) x $100) +$50) x (599 employees)].

### C. Plaintiff Seeks Waiting Time Penalties of $1,062,336

34. Labor Code section 203(a) provides that, "if an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty" from the date such wages were due until the date paid. However, Labor Code section 203(a) provides that such wages "shall not continue for more than 30 days."

35. Plaintiff alleges that "during the Class period, Defendant[] willfully failed to pay former employees in the Class their earned and unpaid wages, either at the time of their discharge or within seventy-two [72] hours of quitting." (FAC ¶ 38.)

36. The alleged limitations period for potential claims under Labor Code section 203 would be from December 2, 2011 (three years before the Complaint was filed) to the present. From December 2, 2011 to January 15, 2015 (the last date for which data are presently available), there were approximately 220 former non-exempt employees who worked for Defendant in California. (Lloyd Decl., ¶ 3; Devaux Decl., ¶ 7.) The average hourly rate of pay for these individuals is approximately $20.12 per hour during the proposed class period. (*Id.*)

37. Calculating that these employees are owed 8 hours of pay per day for the maximum penalty of 30 days' wages, the alleged amount in controversy for the claim for waiting time penalties would be **$1,062,336** [(220 former non-exempt employees) x (8 hours per day) x (30 days) x (average hourly rate of $20.12)].

### D. Attorneys' Fees

38. Plaintiff also seeks attorneys' fees. (FAC Prayer.) A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002)); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *15 (E.D. Cal. Apr. 30, 2007) (attorneys' fees appropriately included in determining amount in controversy).

39. In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *15-29 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25 percent presumptive benchmark upward and found

that plaintiffs' request for attorneys' fees in the amount of 42 percent of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6-7 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30 percent of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund). Even under the conservative benchmark of 25 percent of the total recovery, attorneys' fees could be as high as **$2,372,341**.

### E. Summary Of Aggregate Amount In Controversy

40. Based upon Plaintiff's allegations regarding (a) failure to provide legally-compliant rest periods; (b) failure to provide legally-compliant wage statements; and (c) failure to timely pay Plaintiff and other putative class members who have separated from employment all wages allegedly owed to them upon separation, the amount in controversy is at least $9,489,364 in penalties alone. Moreover, 25 percent of those amounts in attorneys' fees increase the amount in controversy by $2,372,341. Therefore, the amount in controversy implicated by Plaintiff's class-wide allegations exceeds $5,000,000 [($9,489,364) + ($2,372,341)=$11,861,705].

## IV. ENTITLEMENT TO CAFA REMOVAL

41. Because there are more than 100 putative class members, because diversity of citizenship exists, and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court.

42. To the extent that Plaintiff has alleged any other claims for relief in the FAC over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## VENUE

43.     Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 1441, 1446(a) and 84(a). This action originally was brought in the Superior Court of the State of California, County of Los Angeles. The County of Los Angeles is located within the jurisdiction of the United States District Court, Central District of California, Western Division.

## NOTICE OF REMOVAL

44.     Pursuant to 28 U.S.C. Section 1446(d), written notice of the filing of this Notice of Removal will be given promptly served on Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Los Angeles.

45.     This Notice of Removal will be served on counsel for Plaintiff. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

## PRAYER FOR REMOVAL

WHEREFORE, Defendant prays that the above action now pending before the Superior Court of the State of California for the County of Los Angeles be removed to the United States District Court for the Central District of California.

DATED: February 6, 2015                     Respectfully submitted,

SEYFARTH SHAW LLP


By: */S/ Robin E. Devaux*
Camille A. Olson
Richard B. Lapp
Robin E. Devaux
Attorneys for Defendant
DHL EXPRESS (USA), INC.