E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | May 21, 2015 |
|---|---|---|---|
| Title | *Jorge Alberto Mejia v. DHL Express (USA), Inc.* | | |

| Presiding: The Honorable | GEORGE H. KING, CHIEF U. S. DISTRICT JUDGE |
|---|---|

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order re:** Plaintiff's Motion to Remand (Dkt. 20)

This matter is before us on the above-captioned Motion. We have considered the papers filed in support of and in opposition to this Motion, and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

## I.     Procedural and Factual Background

On December 2, 2014, Plaintiff Jorge Alberto Mejia ("Mejia") brought this class action in state court against Defendant DHL Express (USA), Inc. ("Defendant") alleging various claims based on violations of the California Labor Code. (Dkt. 1-1, Compl.) On January 7, 2015, a First Amended Complaint ("FAC") was filed, and Defendant was served for the first time shortly thereafter. (Dkt. 1-2, FAC; Dkt. 1-3, Summons.) On February 6, 2015, Defendant removed this action to federal court on the basis of CAFA jurisdiction. (Dkt. 1, Notice of Removal ("NOR").) On March 20, 2015, Plaintiff filed this Motion to Remand ("Motion"), claiming that we lack jurisdiction because the amount in controversy does not exceed $5,000,0000. (Dkt. 20.)

Plaintiff alleges that Defendant "adopted and maintained uniform policies, practices and procedures . . . that violated California's labor law." (FAC at ¶ 11.) Among other things, he alleges that Defendant failed to pay for meal and rest breaks, failed to pay minimum wage, failed to pay hours worked, failed to supply accurate wage statements, and failed to promptly pay wages owed to class members at the end of their employment.

## II.    Legal Standard

CAFA provides that federal district courts have "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" there is minimum diversity between the parties. 28 U.S.C. § 1332(d)(2). "[U]nder CAFA[,] the burden of establishing removal jurisdiction remains, as before, on the proponent

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | May 21, 2015 |
|---|---|---|---|
| Title | *Jorge Alberto Mejia v. DHL Express (USA), Inc.* | | |

of federal jurisdiction." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curiam). "Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Id.* at 683.

To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). If the plaintiff or the court contests defendants allegation, however, "[e]vidence establishing the amount is required." *Id.* "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554. In proving the amount in controversy, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citation and internal quotation marks omitted). Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions. *Id.*

Defendant contends that the Supreme Court's reference to "both sides" submitting proof means that Plaintiff should have produced affirmative evidence showing that the amount in controversy is *not* satisfied with his Motion. We recently rejected a similar argument in our remand order for *Erick Lina v. Barnes & Noble, Inc.*:

> [W]e do not believe that *Dart Cherokee* changed anything regarding the relevant procedure once a party challenges federal jurisdiction. *See Manibhadra, Inc. v. Aspen Ins. UK Ltd.*, 2014 WL 7246858, at *1-2 (D. Kan. Dec. 17, 2014) (concluding that, with respect to "the procedure when the plaintiff challenges the defendant's assertion of the amount in controversy[,] . . . *Dart* does not change established [] law"). The Court's statement that "when a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof" was derived from 28 U.S.C. § 1446 . . . . *Dart Cherokee*, 135 S. Ct. at 554 (quoting § 1446(c)(2)(B) for the proposition that "removal . . . is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the [necessary] amount"). The relevant House Judiciary Committee Report merely states that "[d]iscovery *may* be taken with regard to [the jurisdictional threshold]. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies." H.R. Rep. No. 112-10, p. 16 (2011) (emphasis added).
>
> Defendants claim that the *Dart Cherokee* Court's use of the phrase "both sides submit proof" means that both sides *must* submit proof of the amount of controversy now, but the Ninth Circuit has made clear that this remains an open question. *See Ibarra*, 775 F.3d at 1199-1200 ("Plaintiffs contend, on the other hand, that plaintiffs' motion to remand need not include evidence and is allowed to 'be based on the fact that Defendant's

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | May 21, 2015 |
|---|---|---|---|
| Title | *Jorge Alberto Mejia v. DHL Express (USA), Inc.* | | |

evidence is insufficient to meet the burden of proof,' and that requiring plaintiffs to submit evidence first 'would fundamentally switch to plaintiffs the burden of defeating subject-matter jurisdiction.' The Supreme Court did not decide the procedure for each side to submit proof on remand, and here we need not decide the procedural issue, either."); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *2 (C.D. Cal. Mar. 3, 2015) ("While the Ninth Circuit held that both parties are entitled to submit summary-judgment-style evidence regarding the propriety of removal, it declined to decide whether a plaintiff was required to submit evidence refuting the defendant's allegations and evidence of the amount in controversy in order to prevail on a motion to remand.").

CV 15-281-GHK (CWx), at *4-5 (C.D. Cal. April 1, 2015) (footnote omitted). While Plaintiff *may* rebut Defendant's evidence with his own evidence, he need not do so in order to prevail in his Motion.

### III. Amount in Controversy

In the NOR, Defendant alleges that the amount in controversy is satisfied because the amount recoverable for three of Plaintiff's nine claims exceeds in $5,000,000. Those three claims are (1) failure to provide rest periods in violation of Labor Code § 226.7(b), (2) failure to provide accurate wage statements in violation of Labor Code § 226(a), and (3) failure to pay waiting time penalties in violation of Labor Code § 203(a).

#### A. Rest Period Violations

California Labor Code § 226.7(b) provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period." The penalty for violation of section 226.7(b) is "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c). The statute of limitations for a claim based on any statutory claim in California, other than a penalty or a forfeiture, is three years. *See* Cal. Code Civ. Proc. § 338(a).

In its NOR, Defendant submits that it had 722 non-exempt employees in California between December 2, 2011 and January 15, 2015.[1] (NOR at ¶ 28.) Defendant further contends that the average pay for these employees was $21.40/hour and that the employees collectively worked 314,013 workdays. (*Id.* at ¶ 28.) As evidence to support these assertions, Defendant provides declarations from

---

[1] Plaintiff suggests that there was something inappropriate about Defendant including in its estimate time after the date of the filing of the FAC. But Plaintiff chose to define the class period in the FAC as running up "until the date of certification," not the date of filing. (*See* FAC at ¶ 7.) Including post-filing time is not inconsistent with the allegations in the FAC.

E-FILED
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | May 21, 2015 |
|---|---|---|---|
| Title | *Jorge Alberto Mejia v. DHL Express (USA), Inc.* | | |

its employees and its attorney.[2]  (Nugen Decl. at ¶ 4, Lloyd Decl. at ¶ 3, Devaux Decl. at ¶ 6.)  Assuming a violation occurred each workday, 314,013 multiplied by $21.40 equals $6,719,878.20.  (NOR at ¶ 29.)

     Plaintiff argues that this calculation overstates the amount in controversy because it is unreasonable to assume a "100% violation rate."  Whether a removing defendant may assume a "100% violation rate" depends on the allegations in the plaintiff's complaint.  In *Lewis v. Verizon Commc'ns, Inc.*, the Ninth Circuit concluded that where the plaintiff alleged that the defendant billed customers for services without authorization, the defendant was free to include 100% of its billings for such services in its estimate of the amount in controversy since the plaintiff did "not attempt[] to demonstrate, or even argue, that the claimed damages are less than the total billed."  627 F.3d 395, 400 (9th Cir. 2010).  In *Ibarra v. Manheim Investments, Inc.*, the Ninth Circuit concluded that the removing defendant could not assume a 100% violation rate where the plaintiff had alleged only that the defendant had a "pattern and practice" of committing wage-and-hour violations, and the class representative had experienced violations only on "multiple occasions," not every occasion.  775 F.3d 1193, 1198 (9th Cir. 2015).  In *LaCross v. Knight Transportation Inc.*, the Ninth Circuit held that the removing defendant could assume a 100% violation rate where plaintiff had alleged that the defendant missclassifed truck drivers as independent contractors because all of drivers "allegedly should have been classified as employees rather than as independent contractors."  775 F.3d 1200, 1202 (9th Cir. 2015).

     The only Ninth Circuit case that arguably stands for the proposition that there is a bright-line rule forbidding a removing defendant from assuming a 100% violation rate is *Garibay v. Archstone Communities LLC*, 539 Fed. Appx. 763, 764 (9th Cir. 2013) (criticizing a removing defendant for assuming, in the context of a wage-and-hour class action, that "every single member of the class would be entitled to recover penalties for every single pay period" and for failing to provide evidence to justify its assumption that there were two rest period violations per work week).  As it is unpublished, *Garibay* has no precedential weight.  *See* 9th Cir. R. 36-3 ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").  Moreover, to the extent that *Garibay* demands that removing defendants submit evidence of their liability—i.e., evidence of a violation rate— to establish jurisdiction, it is inconsistent with *Lewis*.  *See* 627 F.3d at 400 ("The amount in controversy is simply an estimate of the total amount in dispute, *not a prospective assessment of defendant's liability*.  To establish the jurisdictional amount, Verizon need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking Verizon to admit that at least $5 million of the billings were 'unauthorized' within the meaning of the complaint.") (emphasis added); *see also Patel v. Nike Retail Servs., Inc.*, _ F. Supp. 3d _, 2014 WL 3611096, at *6 n.4 (N.D. Cal. July 21, 2014) ("[T]his Court acknowledges that it cannot fully reconcile the *Lewis* approach with the approach apparently taken by

---

     [2] Plaintiff objects to the declarations from Defendant's counsel on the ground that he lacks personal knowledge.  (Reply at 6-12.)  This objection is **OVERRULED** because Defendant's employees provided company records to counsel, and he had personal knowledge of these records after reviewing them.  (*See* Nugen Decl. at ¶ 4; Lloyd Decl. at ¶ 3.)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | May 21, 2015 |
|---|---|---|---|
| Title | *Jorge Alberto Mejia v. DHL Express (USA), Inc.* | | |

the Ninth Circuit in *Garibay* . . . . Faced with this potential conflict, this Court accepts the Ninth Circuit's published opinion as the superior authority.").

Plaintiff's FAC does not contain any allegations that suggest a 100% violation rate is an impermissible assumption. Unlike in *Ibarra*, Plaintiff does not allege that there was a "pattern and practice" or that the lead plaintiff experienced violations only on "multiple" occasions. Instead, Plaintiff alleges that Defendant "adopted and maintained uniform policies, practices and procedures" that caused the purported violations of California's rest period law. (FAC at ¶ 11.) It is not unreasonable to assume that when a company has unlawful policies and they are uniformly "adopted and maintained," then the company may potentially violate the law in each and every situation where those policies are applied. Thus, this case is more like *Lewis* than *Ibarra* and a 100% violation rate is not an unreasonable assumption to use in estimating the amount in controversy in light of the allegations in the FAC. Since Defendant has submitted evidence to show that the class members worked 314,013 days in the class period and that the average penalty would be $21.40 per violation, the amount in controversy for the rest period claim can be roughly estimated at $6,719,878.20.[3]

### B.    Wage Statement Violations

California Labor Code section 226(a) provides that employers shall, "semimonthly or at the time of each payment of wages," furnish each employee with "an accurate itemized statement in writing showing" all of the items of information required by Labor Code section 226(a)(1)-(9). The penalty for a violation is "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226. The statute of limitations is one year. *See* Cal. Code Civ. Proc. § 340.

For this claim, Defendant submits that there are 599 putative class members. (Lloyd Decl. at ¶ 3; Devaux Decl. at ¶ 8.) Multiplying the number of class members by the number of pay periods worked by these employees during the relevant period—while accounting for the different penalties under the statute for an initial violation and a repeat violation—Defendant estimates the amount in controversy for this claim to be $1,643,300. (Suppl. Devaux Decl. at ¶ 6.)

Plaintiff contends that this calculation is also flawed because it too assumes a 100% violation rate—i.e., that every single wage statement was unlawful. But, as with the rest period claim, that

---

[3] Defendant's calculation possibly could have been more precise. It is unclear from the declarations submitted whether Defendant took into account the fact that employees who worked less than three-and-half hours in a day would not be entitled to a rest period break. *See* IWC, Wage Order No. 5, subd. 12 ("[A] rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours."). But unless a very significant number of the 314,013 work days were that short, the amount in controversy in this case would still exceed the jurisdictional threshold when one takes into account the amount in controversy from the two other claims for which Defendant has submitted evidence.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | May 21, 2015 |
|---|---|---|---|
| Title | *Jorge Alberto Mejia v. DHL Express (USA), Inc.* | | |

assumption is not inconsistent with anything in the FAC. The FAC alleges a laundry list of potential deficiencies in the wage statements:

> In particular and without limitation, Defendants [sic] furnished wage statements to Plaintiff and other Class members which showed the amount of shift differential compensation but failed to show the amount of hours or applicable rate of compensation for those hours subject to a shift differential. In addition, the wage statements furnished to Plaintiff and the rest of the Class were rendered inaccurate and incomplete by Defendant's failure to pay one hour of wages to Plaintiff and other Class members when they failed to legally-compliant [sic] meal and rest periods. Moreover, the wage statements furnished to Plaintiff and the other Class members were inaccurate, for among others reasons [sic], because (i) Defendants [sic] improperly "rounded," adjusted or edited the time recorded by or for Plaintiff and other Class members and (ii) Defendants [sic] deducted time from the wages of Plaintiff and the rest of the Class regardless of whether they actually received legally-compliant meal period [sic]. By failing to pay for all hours worked by Plaintiff and other Class members, Defendant underpaid the actual amount of regular hours worked by Plaintiff and the rest of the Class. Plaintiff and the rest of the Class members suffered injury as a result of Defendants' [sic] failure to comply with Labor Code Section 226(a).

(FAC at ¶ 33.) It is not unreasonable to assume that, with this many violations alleged, every one of the wage statements issued during the class period could potentially have been noncompliant. In addition, and aside from the various allegations, if Defendant had a uniform policy of failing to provide rest periods, as discussed above, the wage statements that Defendant provided would necessarily have been inaccurate 100% of the time because each wage statement would have failed to include compensation for the missed rest break. Accordingly, $1,643,300 is not an unreasonable or speculative estimate of the amount in controversy for this claim.

### C. Waiting Time Violations

California Labor Code section 203(a) provides that, "if an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty" from the date such wages were due until the date paid. But such wages "shall not continue for more than 30 days." Cal. Lab. Code § 203(a). The statute of limitations is three years. *See* Cal. Code Civ. Proc. § 338(a).

Defendant found that there were 220 potential class members whose employment ended during limitations period and their hourly rate was an average of $20.12 per hour. (Lloyd Decl. at ¶ 3; Devaux Decl. at ¶ 7.) Defendant then assumed they were owed the maximum penalty of 30 days wages at 8 hours of pay per day, which works out to $1,062,336. (NOR at ¶ 37.)

Plaintiff objects again to assuming a 100% violation rate, not only in assuming that every class

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | May 21, 2015 |
|---|---|---|---|
| Title | *Jorge Alberto Mejia v. DHL Express (USA), Inc.* | | |

members' wages were withheld, but that every one of them was withheld for 30 days. But these assumptions are also not inconsistent with Plaintiff's allegations. Plaintiff does not allege that Defendant simply forgot to give these employees their wages when they quit. Rather he alleges that by failing to pay for meal breaks and rest breaks and other hours worked, Defendant "withheld" those amounts unlawfully:

> [B]y failing to pay for all hours worked by Plaintiff and other Class members, Defendant underpaid the actual amount of regular hours worked by Plaintiff and the rest of the Class. In addition, as alleged above, Defendants [sic] failed to pay one hour of wages to Plaintiff and other Class members when Defendants [sic] failed to provide legally compliant meal and rest breaks. These unpaid amounts were still owing to former employees in the Class when they ended their employment with Defendants [sic]. Consequently, Defendants [sic] failed to timely pay all wages due former employees in the Class at the time that their employment ended.

(FAC at ¶ 39.) Since it is reasonable to assume a 100% violation rate for the rest break claim, then it is reasonable to further assume that 100% of the former employees would have had those unpaid rest break wages unlawfully withheld after their employment ended and still not paid up to the maximum 30-day period under the statute. Accordingly, $1,062,336 is a reasonable estimate of the amount in controversy.[4]

### IV. Conclusion

The estimated sum of these three claims is $9,425,514, far more than the $5,000,000 required for CAFA jurisdiction. Accordingly, we have subject matter jurisdiction, and Plaintiff's Motion is **DENIED**.

**IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
|  | Initials of Deputy Clerk | | Bea |

---

[4] Here, too, Defendant's calculation could have been more precise. Damages for violations of section 203(a) are calculated by determining the plaintiff's "daily" wages and multiplying by 30. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998). Thus, a more accurate estimate of the amount in controversy would require determining how many hours the class members worked on average per day, rather than simply assuming a full-time, eight-hour workday for all. Given the value of the other claims alleged, it is unlikely that a more precise calculation would lower the amount in controversy to below the jurisdictional threshold.