UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

E-FILED

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|

| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* |
|---|---|

| Presiding: The Honorable | **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE** |
|---|---|

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None | None |

**Proceedings:**     **(In Chambers) Order re:** Plaintiff's Motion for Class Certification (Dkt. 36)

This matter is before us on Plaintiff Jorge A. Mejia's Motion for Class Certification ("Motion"). (Dkt. 36.)  We have considered the papers filed in support of and in opposition to this Motion and deem this matter appropriate for resolution without oral argument.  L.R. 7-15.  As the Parties are familiar with the facts, we will repeat them only as necessary.  Accordingly, we rule as follows:

## I.      INTRODUCTION

On December 2, 2014, Plaintiff Jorge A. Mejia filed this wage-and-hour class action against Defendant DHL Express (USA), Inc.  In his First Amended Complaint ("FAC"), Plaintiff asserts the following claims against Defendant: (1) denial of meal breaks in violation of California Labor Code sections 226 and 512; (2) denial of rest breaks in violation of California Labor Code section 226; (3) failure to pay wages for hours worked in violation of California Labor Code section 204; (4) failure to pay minimum wages in violation of California Labor Code sections 1194, 1194.2, 1197, and 1197.1; (5) failure to provide accurate wage statements in violation of California Labor Code section 226(a); (6) failure to pay wages at discharge in violation of California Labor Code sections 201-203; (7) failure to pay vested vacation wages at discharge in violation of California Labor Code section 227.3; (8) violation of California's Unfair Competition Law under California Business and Professions Code sections 17200, *et seq.*; and (9) PAGA penalties.

Defendant is a division of the German company Deutsche Post DHL, which provides international express mail services.  (Dkt. 45, Opp'n at 3.)  In California, Defendant operates a "Gateway" facility at Los Angeles International Airport ("LAX"), where employees load and unload planes and "clear goods in the air before landing."  (*Id.* at 4.)  Prior to 2013, Defendant also operated a Gateway at San Francisco International Airport ("SFO").  (*Id.*)  Other than LAX Gateway, Defendant operates ten "service centers" or "stations" throughout California.  (*Id.*)  Plaintiff and putative class members are current and former employees of Defendant's California operations.  (Mot. at 5.)  Plaintiff worked as an "international service agent" at the LAX Gateway facility from approximately 1999 to December 13, 2013, when he was terminated.  (Dkt. 36, Mejia Decl. ¶ 2.)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|

| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* |
|---|---|

Plaintiff's FAC is based on the following allegations and theories of liability: First, Plaintiff claims that Defendant denied its employees full compensation through a computerized timekeeping system called Kronos that rounds self-reported work time to the detriment of employees.  (Mot. at 2.)  Specifically, Plaintiff contends that if an employee clocked in during the fifteen or thirty minutes prior to his or her scheduled shift, depending on the work site, Kronos would automatically round forward the clock-in time to the scheduled shift start time.  (*Id.* at 10.)  However, if the employee clocked in even a minute after the scheduled shift start time, Kronos allegedly would not round back the clock-in time to the scheduled shift start time.[1]  (*Id.* at 11.)  As such, Plaintiff contends that Defendant practiced one-way time rounding.[2]  Because of this alleged one-way time rounding, employees' wage statements allegedly did not include the correct number of hours worked and wages to be paid, and former employees did not receive the correct amount in final wages owed.  (*Id.* at 2-3.)  Second, separate from the time rounding claims, Plaintiff alleges that Defendant also failed to provide its employees with wage statements that showed the hourly rates for "shift differential" compensation and the number of hours worked at "shift differential" rates.[3]  (*Id.* at 2.)

On these bases, Plaintiff now moves pursuant to Federal Rule of Civil Procedure ("Rule") 23 to certify the following class and subclasses with respect to the third, fourth, fifth, sixth, and eighth claims alleged in the FAC:

Class: All current and former employees of DHL who were employed as non-exempt or hourly employees at any of DHL's locations anywhere in the State of California at any time since December 2, 2010 and who are included in one or more of the following subclasses.

Rounded Shift Start Time Subclass: All current and former employees of DHL who were employed as non-exempt or hourly employees at any of DHL's locations anywhere in the State of California at any time since December 2, 2010, who used a time clock to clock in and out of work for DHL and whose scheduled shift start times were rounded by DHL's computerized timekeeping system.

Rounded Time Wage Statement Subclass: All current and former employees of DHL who were employed as non-exempt or hourly employees at any of DHL's locations anywhere

---

[1] For example, assume an employee had a shift start time at 7:00 a.m.  If the employee clocked in at 6:51 a.m., the Kronos system would round forward the clock-in time to 7:00 a.m.  If the employee clocked in at 7:02 a.m., the system would not round at all.

[2] Defendant calls the time between when an employee clocks in and the employee's shift starts a "grace period."  (*See* Opp'n at 9.)  It contends that employees do not work during these so-called "grace periods."

[3] Plaintiff claims that Defendant paid additional amounts per hour for "certain work shifts like 'graveyard' shifts.  These additional hourly rates of pay are known as 'shift differentials.'"  (*Id.* at 1-2.)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|

| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* | | |

in the State of California at any time since December 2, 2013, and who received one or more wage statements from DHL during that period showing hours of work based on rounded clock times.

Shift Differential Wage Statement Subclass: All current and former employees of DHL who were employed as non-exempt or hourly employees at any of DHL's locations anywhere in the State of California at any time since December 2, 2013, who received one or more wage statements from DHL during that period which failed to show the hourly rates for "shift differential" compensation or the number of hours worked at "shift differential" rates.

Final Wage Subclass: All former employees of DHL who were employed as non-exempt or hourly employees at any of DHL's locations anywhere in the State of California at any time since December 2, 2011, who used a time clock to clock in and out of work for DHL and whose time was rounded by DHL's computerized timekeeping system.[4]

(Mot. at 13-14.)

Before turning to whether we should certify these subclasses, we must resolve three preliminary matters. First, Plaintiff has submitted evidentiary objections to the various declarations that Defendant filed in its Opposition. (*See* Dkt. 49-1, Memo. Objecting to Decls.) Because we do not rely on the specific paragraphs that Plaintiff objects to, the objections are moot. Second, Defendant moves to strike "three new declarations, including exhibits improperly filed by Plaintiff" in his reply brief. (Dkt. 51.) And third, Defendant argues that the Labor Management Relations Act ("LMRA") preempts Plaintiff's claims. (Opp'n at 22-25.) We address these latter two issues immediately below.

## II.    MOTION TO STRIKE

Defendant moves to strike the declarations and exhibits that Plaintiff submitted in his reply brief. (Dkt. 51.) These include the supplemental declarations of Plaintiff, Plaintiff's expert consultant Peter Banos, and Plaintiff's counsel Gregg Farley, as well as exhibits relating to each of their declarations. (*See* Dkt. 49.) Defendant argues that the declarations and exhibits were improperly submitted in a reply and that Plaintiff relies on them to make new arguments. (Dkt. 51 at 1-2.)

Defendant's motion to strike is **DENIED**. Local Rule 7-10 explicitly provides that a moving party can submit "declarations or other rebuttal evidence" with a reply brief. L.R. 7-10. Each of the declarations and exhibits is responsive to arguments made in Defendant's Opposition. They respond to Defendant's arguments that Plaintiff intentionally retained overpayments, that Defendant utilizes "grace

---

[4] For the sake of expediency, we refer to the Rounded Shift Start Time Subclass, the Rounded Time Wage Statement Subclass, and the Final Wage Subclass as the "time rounding subclasses." We refer to the Shift Differential Wage Statement Subclass as the "shift differential subclass."

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|

| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* |
|---|---|

periods" rather than "rounding," and that Defendant does not have a uniform policy of "rounding" time. We consider the evidence submitted with the reply brief given that it serves as rebuttal evidence.

## III.   FEDERAL PREEMPTION

Defendant argues that LMRA § 301, 28 U.S.C. § 185, preempts Plaintiff's time rounding and shift differential claims. (Opp'n at 22.) "LRMA § 301 preempts state-law claims that are 'substantially dependent' upon analysis of the terms of an agreement made between the parties in a labor contract. More specifically, LMRA will operate to preempt a state-law claim whose resolution depends upon the meaning of a [collective bargaining agreement ('CBA')]." *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008). "The plaintiff's claim is the touchstone for this [preemption] analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 638, 691 (9th Cir. 2001). "Moreover, alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must require interpretation of a provision of the CBA." *Id.* at 691-92.

Here, many of the employees within the putative subclasses are unionized. (*See* Opp'n at 4.) Defendant's unionized employees are covered by a variety of CBAs. (Fernandez Decl. ¶ 4.) The CBAs that cover the putative class members here "describe[] shift differential payments, including the times of day when such payments are applicable." (*Id.* ¶ 9.) But they are silent as to rounding. (*Id.* ¶ 8.) Defendant's Labor Relations Manager Dave Fernandez explains that "[w]hether a particular CBA is considered silent on a particular subject requires detailed knowledge and interpretations of the various CBAs and the union-management 'past practices,' which are practices that are applied to the unionized workforce but which may not be fully documented in the CBAs, riders, or supplements." (*Id.* ¶ 7.) He claims that Defendant's rounding policies are union-management "past practices." (*Id.*)

Defendant argues that its rounding, or grace period, policies are "considered to be a part of these CBAs." (Opp'n at 25.) It claims that in evaluating the rounding claims, we would need to engage in an "interpretation of this practice, and thus of the CBAs . . . in order to determine whether the union has agreed to the 'grace period,' has agreed that no work is to be performed during this time, and has agreed that no pay will be provided for it." (*Id.*) Thus, Defendant argues the rounding claims are preempted. It argues the shift differential claim is also preempted because the specifics as to shift differential pay—i.e., what wage rates are associated with different types of shift differential work—are controlled by the CBAs. (*Id.*)

We do not agree that Plaintiff's claims are preempted. Defendant has not cited a single case in which an alleged unwritten union policy preempted a state law claim. Defendant cites *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580 (1960) for the proposition that the "industrial common law—the practices of the industry f 1nd the shop—is equally part of the collective bargaining agreement." However, *United Steelworkers* was not a preemption case. The Supreme Court made the quoted statement in the context of what a "labor arbitrator" can consider in "fashion[ing] judgments [that] may indeed be *foreign to the competence of courts*." *Id.* at 581 (emphasis added). As

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | | Date | February 25, 2016 |
|---|---|---|---|---|
| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* | | | |

the *Cramer* court stated, "adjudication of the claim must require interpretation of a provision of the CBA." *Cramer*, 255 F.3d at 691-92. "[A] reference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms." *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 749 (9th Cir. 1993). Adjudication of the time rounding claims does not require an interpretation of "a provision of the CBA[s]" because Defendant admits that there is *no provision* that contains a rounding policy. Even assuming Defendants' rounding policies are part of the CBAs, determining whether the policies comply with California law entails only a reference to or consideration of the terms of the CBAs, not an interpretation of those terms. As to the shift differential claim, Defendant does not point to any CBA provision that states what information an employer must place on an employee's wage statement; thus, resolution of this claim also does not require an interpretation of the CBAs. Accordingly, Defendant has not shown that Plaintiff's claims are preempted by LMRA § 301. We now proceed to the Rule 23 class certification analysis.

## IV.    CLASS CERTIFICATION ANALYSIS

In what follows, we review the federal law applicable to class actions in general, then consider certification of the time rounding and shift differential subclasses. Because the proposed subclasses embody all of Plaintiff's class action claims, we will not separately consider whether the general class can be independently certified. *See Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197 (E.D. Cal. Feb. 10, 2015) (taking similar organizational approach to certifying wage-and-hour class action subclasses); *Escano v. Kindred Healthcare Operating Co., Inc.*, 2013 WL 816146 (C.D. Cal. Mar. 5, 2013) (same).

### A.    *Legal Standard*

A motion for class certification is governed by the requirements of Rule 23. If a plaintiff seeks to certify subclasses under Rule 23(c)(5), as is the case here, each subclass must independently meet the requirements for the maintenance of a class action. *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981). Plaintiff must establish that the following Rule 23(a) prerequisites for each proposed subclass are met:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Though not specifically mentioned in Rule 23(a), ascertainability is also a threshold prerequisite to class certification. *See Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002). Moreover, because Plaintiff seeks to certify Rule 23(b)(3) subclasses, he must make the additional showing of predominance and superiority for each subclass.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|

| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* |
|---|---|

Plaintiff bears the burden of "affirmatively demonstrat[ing]" that the Rule 23 requirements have been met. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). That is, he must prove that "there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Applied Indus. & Serv. Workers Int'l Union, AFL-CIO C.L.C. v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010). We must conduct a "rigorous analysis" to ensure that Plaintiff has met the Rule 23 prerequisites. *Zinser*, 253 F.3d at 1186.

While we may generally accept the allegations in the complaint as true in determining class certification, we must consider the merits of the claims to the extent they overlap with the Rule 23 requirements, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011), given that "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)). However, we need not "determine whether class members could actually prevail on the merits of their claims," because to do so would improperly "turn class certification into a mini-trial." *Ellis*, 657 F.3d at 983 n.8; *see also Escano v. Kindred Healthcare Operating Co.*, 2013 WL 816146, at *1 (C.D. Cal. Mar. 5, 2013).

### B. Ascertainability

"A class is sufficiently defined and ascertainable if it is administratively feasible for the court to determine whether a particular individual is a member." *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012). Class definitions relying on verifiable, objective criteria like documentation of a purchase will satisfy the ascertainability requirement. *Id.* at 522. Here, the proposed subclasses are ascertainable. Determining what employees are in each subclass can be done readily by reference to company timekeeping records. Defendant also does not challenge certification on the basis of ascertainability.

### C. Numerosity

The proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticality does not mean impossibility"; rather, the inquiry focuses on the difficulty or inconvenience of joining all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). "[W]here 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *Delarosa v. Boiron*, 275 F.R.D. 582, 588 (C.D. Cal. 2011). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Plaintiff has submitted evidence based on Defendant's payroll records that from December 2, 2010 to the present, Defendant employed approximately 889 non-exempt employees in California. (Mot. at 5; Banos Decl. ¶ 6.) Plaintiff also has submitted evidence that about 392 of these employees received wage statements showing shift differential compensation between December 2, 2013 and June 18, 2015, the last date for which Defendant produced records during discovery. (Mot. at 6; Banos Decl. ¶ 6.) Because Plaintiff claims that the time rounding and shift differential policies at issue

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|

| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* |
|---|---|

affected every non-exempt employee, (Mot. at 1), Plaintiff has satisfied the numerosity requirement. Defendant does not dispute that Rule 23's numerosity requirement is satisfied.

### D. *Commonality and Predominance*

"Because the Rule 23(b)(3) predominance inquiry subsumes the Rule 23(a)(2) commonality inquiry, and for the sake of efficiency, [we will] analyze commonality and predominance together in the context of [the] proposed . . . subclass[es]." *Brewer v. Gen. Nutrition Corp.*, 2014 WL 5877695, at *4 (N.D. Cal. Nov. 14, 2014).

Commonality requires a plaintiff to demonstrate that "class members have suffered the same injury," by showing their claims "depend upon a common contention." *Dukes*, 131 S. Ct. at 2551. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality requires only a single significant question of law or fact. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (citing *Dukes*, 131 S. Ct. at 2556).

Relatedly, predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It focuses on the relationship between the common and individual issues, requiring that the common issues be qualitatively substantial in relation to the issues peculiar to individual class members. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Where dissimilarities among class members do not impede the generation of common answers, the post-*Dukes* predominance inquiry requires us to consider whether other issues unique to individual class members are likely to render adjudication by representation impractical. *See* 131 S. Ct. 2541 at 2256.

In what follows, we consider commonality and predominance first with respect to the three time rounding subclasses and then with respect to the shift differential subclass. We conclude that Plaintiff has failed to show that common questions predominate over the time rounding subclasses, but has borne his burden with respect to the shift differential subclass.

### 1. Time Rounding Subclasses

We analyze the three time rounding subclasses together because our certification of them depends on whether Defendant had a common and predominating time rounding policy that is "apt to drive the resolution of the litigation." *Id.* at 2551 (internal quotation marks omitted).

Plaintiff claims that the following question is common to the three time rounding subclasses: "whether DHL failed to pay wages to its California non-exempt employees by having its computerized timekeeping system programmed to automatically round downward the recorded clock times of such employees." (Mot. at 1.) The answer to this question will not necessarily "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. This is

E-FILED

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|

| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* |
|---|---|

because the mere presence of a rounding policy says nothing about Defendant's liability.  Whether that rounding policy is lawful depends on whether employees were in fact working during the so-called "grace periods."  *See See's Candy Shops, Inc. v. Super. Ct.*, 210 Cal. App. 4th 889, 909 (2012) ("The parties agree . . . that under California law a grace period (the time during which an employee punches in before his or her compensable pay is triggered) *is* allowed *if* the employee is not working or is not under the employer's control." (emphasis in original)).  In other words, if we cannot discern by resort to a common method of proof whether employees were uniformly working during grace periods, then the presence of a time rounding policy does not drive the resolution of this litigation.  Thus, we must determine whether Defendant has a common policy of requiring class members to perform compensable work during grace periods.

"California law requires that employees be compensated for all time 'during which an employee is subject to the control of an employer.'"  *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1061 (9th Cir. 2010) (separate opinion by Silverman, J.) (quoting *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 578 (2000)).  "In defining 'control,' the [California Supreme Court] held employees were subject to the control of their employers when they are prevented from using 'the time effectively for [their] own purposes.'"  *See's Candy*, 210 Cal. App. 4th at 910 (quoting *Morillion*, 22 Cal. 4th at 586).  Accordingly, a common time rounding policy can serve as a classwide method of proof only if class members were uniformly under Defendant's control when they clocked in before their shift start time.  Otherwise, an individualized inquiry would be required to determine whether class members were working during grace periods.

Plaintiff argues that class members were subject to Defendant's control the moment they clocked in because Defendant's employee handbook states that "[e]lectronic time reporting must accurately reflect hours worked[.]"  (Reply at 20; Farley Decl. ¶ 23; DHL Employee Handbook at 12.)  However, this argument is unconvincing because Plaintiff offers no evidence to suggest that "electronic time" means clock-in time.

To the extent Plaintiff argues that merely clocking in means that an employee is under an employer's control, this argument fails as well.  "While clocking in and clocking out are relevant to and probative of whether an employee is under an employer's control, they are far from dispositive and, standing alone, do not prove that an employee must be paid for the time spent [on]-the-clock but outside of the employee's scheduled start time." *Forrand v. Fed. Express Corp.*, 2013 WL 1793951, at *3 (C.D. Cal. Apr. 25, 2013) (citing *See's Candy*, 210 Cal. App. 4th at 910-11), *aff'd sub nom. Green v. Fed. Express Corp.*, 614 F. App'x 905 (9th Cir. 2015).  Thus, Plaintiff fails to show that class members were uniformly under Defendant's control when they clocked in before their shifts.  We would need to examine each individual to determine whether employees were performing compensable work during the grace periods.  Such an individualized inquiry would make adjudication by representation impractical.

*Forrand*, a case similar to ours, underscores why certification is not warranted here.  There, a FedEx employee sought to certify a class of employees who were not paid for their "grace periods"—the time between when the employees "clocked in" to the time they started their scheduled shift and from the time they ended their shift to the time they "clocked out."  2013 WL 1793951, at *1.  Focusing on

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | | Date | February 25, 2016 |
|---|---|---|---|---|
| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* | | | |

predominance and citing *Rutti* and *Morillion* for the "control" test, the court noted that the proposed class claim "raises factual questions involving whether each individual employee was in fact working and/or whether the employee was under the employer's control during the grace period." *Id.* at *4. The employee provided no evidence to suggest that all employees were under FedEx's control upon clocking in. *See id.* at *4-5. As such, the employee "failed to demonstrate that class treatment . . . [was] appropriate for her proposed unpaid on-the-clock class." *Id.* at *5. The Ninth Circuit affirmed, noting that the district court "properly applied the standard from *Rutti* and *Morillion* to determine whether the FedEx employees (as a class) were under FedEx's control during the time they were on the clock but not on-shift. Absent a policy that prevents the FedEx employees from using that time for their own benefit, [the employees] cannot show class-wide control by FedEx." *Green*, 614 F. App'x at 906.

Similarly, here, Plaintiff cannot show classwide control by Defendant during grace periods. Other than the guideline from the employee handbook, Plaintiff offers no evidence that class members were under Defendant's control at these times. Despite this lack of evidence, Plaintiff argues that "DHL has not produced any written policies which prohibited employees from working if they clocked in before their scheduled shift start times." (Reply at 20.) But it is Plaintiff's, not Defendant's, burden to show that the Rule 23 requirements are satisfied. Moreover, this apparent absence of a uniform policy only further suggests that whether Defendant controlled each employee during grace periods is an individualized inquiry.

In sum, Plaintiff has failed to show that a common question predominates over the time rounding subclasses. The commonality requirement of Rule 23 is not met because whether Defendant had a common time rounding policy does not answer whether Defendant illegally deprived employees of wages earned. Only an individualized inquiry focusing on Defendant's control of each employee during the grace periods would answer this question. Because of the need for this individualized inquiry, Plaintiff also has not shown that the predominance requirement is met.

### 2.    Shift Differential Subclass

With respect to the shift differential subclass, Plaintiff claims that Defendant "furnished paystubs or wage statements to [him] and other Class members which failed to include all of the items required by [section 226(a) of the California Labor Code]." (Mot. at 4; FAC ¶ 12(e).) Section 226(a) requires employers to include certain information with paychecks, including, for example, wages earned, hours worked, all deductions, the dates of the pay period, the employer's name and address, and all applicable hourly rates. Cal. Labor Code § 226(a). California law requires only a "very modest showing" of injury in a claim under this provision. *Jaimez v. DAIOHS USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010). "An employee is deemed to suffer injury . . . if the employer fails to provide accurate and complete information as required by one or more of [the section (a) requirements] and if the employee cannot promptly and easily determine from the wage statement alone . . . (i) The amount of gross wages or net wages . . . (ii) Which deductions the employer made from gross wages to determine the net wages . . . ." Cal. Labor Code § 226(e). "Promptly and easily" is measured from the perspective of a "reasonable person." *Id.* § 226(e)(2)(C).

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|

| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* |
|---|---|

Plaintiff maintains that Defendant "had a policy and practice of providing wage statements showing the total dollar amount of shift differentials paid to Plaintiff and other Class members" during a pay period, but that the wage statements "failed to show the amount of hours subject to such shift differentials and the applicable hourly rate for such hours subject to shift differentials." (Mot. at 4; FAC ¶ 12(e).) Plaintiff submits one of his own wage statements as evidence of this alleged violation. (Dkt. 47, Ex. 6.) This wage statement lists the amount of shift differential pay for the pay period and the year-to-date amount of shift differential pay, but does not list the number of shift differential hours worked or the corresponding hourly rate for the work. (*See id.*) Moreover, Amy Wood, who works in Defendant's corporate offices,[5] testified that all of Defendant's wage statements for non-exempt California employees were in the same format during the class period. (Wood Depo. at 119.) Wood also admitted that wage statements for these employees did not reflect shift differential hours worked and the corresponding hourly rates. (*Id.* at 125.) Given Plaintiff's exemplar wage statement and Wood's admissions, we can infer that Defendant had a policy of omitting from employee wage statements shift differential hours worked and hourly rates.

Defendant does not dispute that its wage statements omitted such shift differential information. Rather, it argues that § 226's injury requirement cannot be met because "[i]t is dubious that the law requires such pay to be broken out in the manner Mejia asserts—nowhere does § 226 specify such a level of detail for shift differential pay." (Opp'n at 14.) Defendant also argues that Plaintiff cannot show "injury" under § 226 because he could easily calculate the missing information. (*Id.* at 15.) Both of these arguments are inappropriate to consider at the class certification stage because they center on the legality of Defendant's wage-statement policy. But whether commonality and predominance are satisfied does not depend on the policy's legality. It depends on whether "Defendant[s] had a policy that applied to all members of the putative class, raising a common *question* of law [or] fact[.]" *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 521 (C.D. Cal. 2011) (emphasis added); *see also Amgen Inc.*, 133 S. Ct. at 1195 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). Plaintiff has shown that Defendants have a common practice of omitting shift differential hours worked and the hourly rate for shift differential pay on wage statements. This practice raises a common question of law because it is either legal or illegal.

In the final analysis, Plaintiff's shift differential claim certainly involves "questions of law or fact common to the class" given that the shift differential information on the wage statements either complies or does not comply with California law. Moreover, an individualized inquiry into each employee's understanding of his or her wage statements is unnecessary given that the injury requirement is measured from the perspective of a reasonable person. "Because the wage statements are uniform with respect to the alleged § 226 violation, and proof of injury is based upon what a 'reasonable person' would understand from those wage statements, the issues of fact and law to be determined on [the shift differential claim] are both common and predominant." *Brewer*, 2014 WL 5877695, at *5.

> **E.    Typicality**

---

[5] The Parties do not provide her title.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|

| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* |
|---|---|

The typicality inquiry considers whether other putative class members "have the same or similar injury [as the named plaintiffs], whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012). "Representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (internal alteration omitted). Plaintiffs may be atypical where, for example, they are subject to unique defenses that other members of the putative class are not. *See Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

With respect to the time rounding subclasses, Plaintiff argues that his claims are typical of class members because he "experienced the same time rounding as the other class members." (Mot. at 22.) Plaintiff has not carried his burden of demonstrating typicality for the same reason that he failed to demonstrate that common questions predominate. Whether Defendant's rounding policy is legal depends on whether each class member was working during the so-called "grace periods," which is an individualized inquiry. Accordingly, the mere fact that Plaintiff experienced time rounding does not mean that his claims are "co-extensive" with the claims of absent class members.

However, Plaintiff's claims are typical of the shift differential subclass. He argues that he "was furnished with the same type of wage statements as other class members which failed to show complete 'shift differential' information[.]" (*Id.*) As described, Plaintiff has provided one of his wage statements, which omitted hours worked and the corresponding hourly rate of pay for his shift differential work. Defendant concedes that all of its wage statements contain the same information. Thus, with respect to the shift differential subclass, his claims are "co-extensive" with those of putative class members.

Defendant contends that Plaintiff is not typical of the shift differential subclass because he "provides no evidence to show that he ever lacked the information necessary to understand his wage statements." (Opp'n at 19-20.) Defendant misconstrues the applicable legal standard. Plaintiff's subjective understanding of his wage statements is irrelevant here because § 226's injury requirement depends on the reasonable person, not the individual employee. Moreover, Defendant again makes an argument concerning its liability, which we do not consider at this stage inasmuch as it is not necessary to our class certification ruling. In sum, Plaintiff is typical of the shift differential subclass because both his and class members' wage statements omit hours worked and the hourly rate of pay for shift differential work.

### F.    Adequacy

In determining whether named plaintiffs satisfy the adequacy-of-representation requirement for class certification, we "must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on the class's behalf?" *Evon*, 688 F.3d at 1031 (citation and internal quotation marks omitted).

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|

| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* |
|---|---|

Here, Plaintiff and counsel appear to be free from conflicts of interest. In his declaration, Plaintiff claims that he is "not aware of any significant factual or legal difference between myself and the other employees which would undermine my ability to represent the other employees in the proposed class or subclasses." (Mejia Decl. ¶ 8.) He also states that he does not believe he has "any interest in the outcome of this proposed class action that conflicts with or is any different from the interests of the other employees in the proposed class or classes." (*Id.*) Proposed class counsel, Gregg Farley and Sahag Majarian have both submitted declarations in which they state that they are not aware of any conflict of interest between themselves, on the one hand, and Plaintiff and the proposed class, on the other. (Farley Decl. ¶ 65; Majarian Decl. ¶ 4.) We are satisfied that Plaintiff and counsel are free from conflicts of interest.

As to vigor of prosecution, Plaintiff states that he has "been actively involved in this proposed class action" given that he has spent a "substantial amount of time" assisting counsel in preparing the papers filed in support of the action, including producing documents and attending a full-day deposition. (Mejia Decl. ¶ 9.) In their respective declarations, Farley and Majarian attest to their years of experience as class action lawyers and list various cases on which they have worked. (Farley Decl. ¶¶ 2-3; Majarian Decl. ¶ 2.) We are also satisfied that Plaintiff and counsel will prosecute this action vigorously.

Defendant does not challenge counsel's adequacy, but argues that "Plaintiff's lack of credibility renders him an inadequate class representative." (Opp'n at 20.) A class representative's credibility may be relevant to his or her adequacy. *See Searcy v. eFunds Corp.*, 2010 WL 1337684, at *4 (N.D. Ill. Mar. 31, 2010). However, "[o]nly when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (citation and quotation marks omitted); *see also Ross v. RBS Citizens, N.A.*, 2010 WL 3980113, at *4 (N.D. Ill. Oct. 8, 2010) (stating that there is "inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction or fraud"); Newberg on Class Actions § 3:68 (5th ed.) ("Most courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical, or even illegal conduct. . . . Courts either do not permit challenges to adequacy on this basis or allow them only to the degree that the personal characteristics are somehow relevant to the litigation; even when permitted, such challenges are rarely upheld." (internal citations omitted)).

Defendant claims that Plaintiff is not a credible representative because he was terminated from his job for falsifying an injury report "in order to hide the fact that he had been injured due to a failure to follow Company work rules." (Opp'n at 20.) Specifically, Plaintiff claimed that he had fallen off his tug at work, and he filed a subsequent injury report that made the fall sound like an accident. (Fernandez Decl. ¶ 12.) However, he later admitted that he had improperly secured a container to a dolly and was injured when he tried to prevent the container from falling. (*Id.*) Plaintiff avers that he did not intentionally lie on the injury report and was not aware of what had caused the accident when he completed the report. (Mejia Supp. Decl. ¶ 6.) Defendant also claims that Plaintiff received a double payment of his final wages but never said anything and did not return the money. (Opp'n at 6.) During his deposition, Plaintiff said he did not recall if he was paid twice. (Mejia Depo. at 91-93.) He claims

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|

| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* |
|---|---|

that he was not notified of the overpayment until this litigation began, and he did not realize it was an overpayment.  (Mejia Supp. Decl. ¶ 11.)

These instances of alleged dishonesty do not so severely cut against Plaintiff's credibility as to make him an inadequate representative.  Neither instance is relevant to the conduct at issue in this case—i.e., whether Plaintiff and proposed class members were subject to unlawful time rounding and wage statement policies.  Moreover, given that we are declining to certify the time rounding subclasses, Plaintiff's credibility (or lack thereof) is even less likely to negatively affect absent class members.  The shift differential claim centers on an objective analysis of wage statements, not on Plaintiff's testimony or personalized experiences at work.  For these reasons, we conclude that Plaintiff satisfies the adequacy requirement.[7]

### G.      Superiority

The superiority inquiry under Rule 23(b)(3) turns on the question whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  In determining superiority, courts must consider the four factors of Rule 23(b)(3).  *Zinser*, 253 F.3d at 1190.

The first factor is the interest of each class member in "individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.  *See, e.g.*, *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982).  The second factor is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class."  Fed. R. Civ. P. 23(b)(3)(B).  The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  This factor often turns on the location of witnesses, evidence, and class members in the action.  *Zinser*, 253 F.3d at 1191 (quoting *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653 (N.D. Cal. 1996)).  The fourth factor is "the difficulties likely to be encountered in the management of a class action."  Fed. R. Civ. P. 23(b)(3)(D).

Here, with respect to the shift differential subclass, the superiority factors weigh in favor of class action treatment.  First, litigation costs would likely "dwarf potential recovery" if each class member litigated individually.  *See Hanlon*, 150 F.3d at 1023.  The maximum recovery under § 226 is $4,000 per

---

[7] Defendant also argues that "it appears Mejia does not comprehend the claims he is purporting to bring on behalf of the putative class," because he stated in a deposition that he was not paid his complete overtime when there are no overtime claims in this case.  (Opp'n at 21 (citing Mejia Depo. at 76).)  This singular statement does not necessarily evince a misunderstanding of the case that would defeat adequacy.  It is possible that Plaintiff thought Defendant's purported time rounding policies deprived him of overtime pay that he otherwise would have received, even if he did not bring an overtime claim on behalf of the class.  Moreover, because this statement appears to bear more the claims underlying the time rounding subclasses that we are not certifying, it is not relevant to whether Plaintiff is adequate to represent the shift differential subclass.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-890-GHK (JCx) | Date | February 25, 2016 |
|---|---|---|---|
| Title | *Jorge A. Mejia v. DHL Express (USA), Inc., et al.* | | |

employee, and the employee is entitled to an award of costs and reasonable attorney's fees.  Cal. Labor Code § 226(e)(1).  This relatively low maximum recovery and the inherent risks of litigation suggest that a class action is superior to other litigation methods for the efficient adjudication of the claim.  Second, we are not aware of any litigation concerning the controversy that has already been brought by class members.  Third, this particular forum is desirable because the class members worked in California, many in Southern California and the Los Angeles area.  Finally, given that common issues predominate over individual ones, the difficulties likely to be encountered in managing a class action are overcome by the efficiencies.  Indeed, Defendant's payment records for each employee can be analyzed readily to determine any issues related to claims and damages.  We conclude that Plaintiff met his burden of establishing Rule 23(b)(3)'s superiority requirement as to the shift differential subclass.

However, Plaintiff has not carried his burden of establishing superiority with respect to the time rounding subclasses.  Because the claims underlying these subclasses turn on individualized inquiries, the class action device is not the superior method of prosecuting these claims.

In conclusion, Plaintiff's shift differential claim meets the requirements of Rule 23(a) and 23(b)(3) and is suitable for class resolution.  However, Plaintiff's remaining claims are not suitable for class treatment.

**V.      CONCLUSION**

In light of the foregoing, we **GRANT in part** Plaintiff's Motion.  We hereby certify the following shift differential subclass:

> All current and former employees of DHL who were employed as non-exempt or hourly employees at any of DHL's locations anywhere in the State of California at any time since December 2, 2013, who received one or more wage statements from DHL during that period which failed to show the hourly rates for "shift differential" compensation or the number of hours worked at "shift differential" rates where the employee had worked and been paid for shifts compensable at different pay rates.

We appoint Jorge A. Mejia as representative of the shift differential subclass.  We also appoint Gregg Farley and Sahag Majarian as class counsel.  The motion to certify the remaining time rounding subclasses is **DENIED**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Deputy Clerk            Bea